We're ready to hear argument in our next case, which is United States v. Deleon, and Mr. Kendrick. Thank you, Your Honor. May it please the Court. Mr. Guerrero-Deleon is in front of the Court on the application of 3B1.2, which is commonly known as the minor role mitigating factor under the guidelines. In the district court, the facts at sentencing clearly reflected that his co-defendant, Mr. Suazo Molino, had a far greater role in the methamphetamine deal that ultimately led to both of their arrests. Because of his minor role in that offense, we argued that he should receive some reduction. It's interesting because most of the case law involving the application of this reduction comes before the sentencing commission actually reached a, they did an amendment. And the reason for that amendment was that it wasn't being applied in a common manner. It wasn't being applied consistently. So the sentencing commission gave us five factors to look at when we're considering whether someone should receive a minor role reduction. Understanding of the scope and structure of the activity, which in this case it's clear that Mr. Suazo Molino, the co-defendant, was involved in the setup. He was involved in the sales and promotion. He was involved in the price negotiation. He was involved in the logistics of the delivery and the actual delivery. And it's only at that delivery where my client, Mr. Guerrero-Deleon, shows up. The second issue is the participation in planning and organization. It's the same thing. We have this extensive planning and organization that my client is not involved in. Decision-making authority, when the confidential informant for the government is calling to find out, how much can I get? How much does it cost? When will it be here? Where will it be? All of those conversations are with the co-defendant, never with Mr. Guerrero-Deleon. The fourth issue, nature and extent of participation in the acts that were performed. Again, same argument that as this deal is progressing and as the integral parts of this deal are being done, my client is not a part of this. And then finally, the degree of benefit. When the confidential informant is making a price negotiation with the co-defendant, it's going to be $18,500 for the methamphetamine and a $1,000 delivery fee. That's consistent with what my client says he ends up with, which is the $1,000. So the degree of benefit, while it might be great compared in a vacuum, it's certainly not a proprietary interest, which is another sort of issue that we look at when trying to determine this reduction. The only case that the government, not the only case, but the case that the government extensively relies on is a Third Circuit case called Self, where someone who could be considered sort of a courier or a delivery person did not get the role reduction, but there was a partnership between that person and his brother who had set up the deal. That's the real issue in this case. My client served a limited function in the case. He was in a role of not only, it wasn't even a drug courier in its truest sense of the word, because he didn't actually deliver the drugs. He was just along for the ride. All the evidence points that we have sort of this transaction from start to finish run by one person. I have trouble understanding sort of what was going on in this hearing. Do you know what the district court meant when the district court said there was no real independent corroborating evidence to let us know anything about these different roles? That's one of the issues I have with the district court's opinion because this was a fairly run-of-the-mill case. It's a guilty plea. There's no mandatory minimum involved. There's no cooperation involved. It's a straightforward application of the guidelines. The facts that led to the guideline application were in the PSR. Neither side objected. So I do not know exactly what the district court, let me say it another way. I think the district court was requiring me to put up some independent evidence to get closer to the role reduction, but I think that evidence was apparent from the PSR. But you see, I think I mentioned that comment too, but what I thought was he was saying was there's nothing here that tells me one way or the other. Who's the lesser of these two people? They're pointing fingers at each other. But the pointing finger at each other only took place in the post-arrest statement. It did too. That's true, but there's nothing pre-arrest that suggests that one of those people is more culpable than the other. Well, I disagree. I can't remember. I specifically believe it was in the PSR, but I also introduced it at the court, and I don't think we used it as a record exhibit. But I'm pretty sure the PSR lays out that the confidential source who is targeting the Mexican drug trafficking organizations speaks to the code of conduct. Right, but you can hypothesize a situation where, you know, I don't want to have any contact. I, the boss, don't, so I send my lackey there. That was the heart of the dispute that we had, and I think that was my disagreement with the district court, because what we're essentially saying is it could have happened this way, but there's nothing to corroborate that. There's no evidence of it, so I don't think that's a factor at all. I think the factors we have are what the government presents as their investigation, what they say happened. And that's really all we're left to do, and I think that's exactly what the commission has asked the courts to do when they changed this guideline and said, everyone can't have the same role in a drug deal. There are people that have lesser culpability and people with greater culpability, and we as a commission have institutionally decided that the lesser culpability gets a lesser sentence. The problem with the way we phrased it just now is that I will never win that argument, because then we would have to go and sort of almost investigate a negative. What I have to rely on is a series of investigatory steps taken by the United States government that point the finger at someone who is working on behalf of, as I think a broker is how I refer to him, a Mexican drug trafficking organization out of Atlanta. Then we have my client, who just shows up at the end. If there was something in the record to suggest that he was the man behind the deal... The other evidence points to what my client says, which is no, he was in charge. You have one statement that says it was Mr. Guerrero de Leon, and you have Mr. Guerrero de Leon saying, no, it was Suazo Molina. We're in even tie there. Then we go and look, how did anybody get arrested in this case? Where did this come from? In this case, better than in a historical evidence case where we have a bunch of cooperating informants, we have actual government staff where the United States government finds a confidential source and says, target this drug organization. He targets it by contacting Suazo Molina, the co-defendant, and setting up a deal with him. In a preponderance of the evidence, is it more likely that my client, who showed up at a delivery, was the person that has the greater role in this, or is it more likely that the person who did all of the business steps required to get the methamphetamine from seller to buyer? He served as the sales promoter, the sales negotiator, the price negotiator, the logistics manager, and then finally the delivery person. So I think that the evidence, just in the PSR alone that no one objected to, really does point to Suazo Molina, under a preponderance of the evidence, being a greater role in this, and my client sort of along for the ride. In the absence of something concrete that would say he was not just along for the ride, then I think he's entitled to the role reduction. And that's what the Commission tells us he's entitled to. And when the Commission speaks, I think we can rest that that is what Congress's position is. So they've directed the courts to effect the amendment they made to the guidelines, which has some, we assume, has some validity behind it. All right, sir. Thank you. Thank you. Mr. Mormon. In Mr. Kendrick's argument that he's just made, he left out an important adverb that is contained in Application Note 3A to the Guideline. That adverb is substantially less culpable than the average participant in the criminal activity. Let me stop you there because this is helpful to me. I'm trying to figure out what the government's argument is, whether you are arguing that as a factual matter, we can't tell what the defendant did and didn't do, or whether you are arguing, even assuming it is as it appears to be from the PSR, that the defendant came in at the last minute and was a co-transporter and courier, he's still not entitled to the reduction because not substantially less culpable. Your Honor, I would argue that the defendant, and I hope this answers your question, that Mr. DeLeon failed to prove he was less culpable, let alone substantially less culpable during the sentencing hearing. He fails to adhere to even the lesser standard that's required by... Because the facts are not as he says they are, or because even if he was brought in toward the end to co-transport these drugs, that doesn't make him less culpable? Even if. Even if. On both circumstances. So how about addressing the even if? Yeah, let's do even if. So even if, let's say we assume DeLeon's version of events is correct. Let's just assume that everything that happened in the PSR, and the government didn't object, it is certainly the more natural inference from the PSR is that the defendant was brought in is that naturally his story is more relevant. Really? Because I thought it said that the confidential informant went after the co-defendant, because the confidential informant had heard that the co-defendant was a broker for these groups in Mexico. The pre-sentence report indicated that the confidential source did make contact with Suárez and Molina first. Isn't it? Okay. And so that is what it said. But if you look at DeLeon's version of events, the statement he gave contained in the PSR, he says that Suárez and Molina approached him to deliver initially two bundles of cocaine. He says that he was close to, and there was a discussion in the briefs about contact, what that means, but nonetheless he was close enough to Mr. Suárez when he was communicating with two men from Texas and overheard Suárez and Molina asking for two pounds of methamphetamine. Why does that have, I mean, I think that shows that he knew what was going on. He was not an unwitting accomplice. Right. Is that what you're getting to? So he's not innocent. Correct. We know he's guilty. Okay. And I also think it's not very credible, I don't think it's credible necessarily that he just happened to overhear something. I think if he acknowledges in a statement that he was close enough to the source of supply from Texas, knew the quantities of what the discussion entailed, at a minimum, that he is involved more particularly with the setup. Let me tell you, I have so many problems with this case. If the district court had said all of that, I would be way more comfortable. I cannot figure out for the life of me what this district court decision rests on. And it's very difficult. I'm just going to be totally candid. I have a particular concern that the very last thing the government says before the district court says, okay, I'm ready to make a decision, is that it relies on our old white case, which is pre the amendment. And it says that, look, I'll assume he's just a courier. But that in and of itself, under white, in and of itself, that's enough. Because without couriers, you don't have distribution. That part of white clearly superseded by the amendment, right? And I see that you're not citing white in front of our court. That sort of integral role thing, that it is not in and of itself enough. And so my concern is that's the last thing the district court hears. Then the district court says, look, I'm ready to rule. Two people are pointing fingers at each other. I'm done. And it makes me very nervous that the district court might have been relying on white. And that would be a legal error. And I thank you so much for that question, because that's important. One of the cases the government cited was the Castro case, which does stand for the proposition that, pursuant to amendment 794, that obviously is no longer determinative. But the Castro court did say, but it's a factor. Right. But it did not say in and of itself is enough, which is what the government was arguing to the district court. In and of itself, it's enough. Without couriers, you don't have distribution. That's just not right. And I'm not blaming anyone. I have a real concern that I can't figure out what the district court's rationale was. And so I'm looking for, well, what's the last thing that got said before the district court? And if I could, Your Honor, what I would I would respectfully I would respectfully suggest that the the what should be the thrust of the examination is, did Mr. De Leon meet his burden of proof by a preponderance of the evidence to show that he was substantially less culpable than the average participant? And under the facts as presented to the district court during the sentencing hearings, did the district court clearly err? In other words, was the district court's belief that that the evidence was, I guess, of there was no independent corroboration, I think was a phrase. Was that belief that basically it was a tie that you have defendants pointing the finger at each other? Was that a plausible finding in light of the evidence presented at the sentencing hearings? And I think, Your Honor, that if that is the lens through which this court examines what occurred at the sentencing hearings, I think that it is it is clear that the district court did not err, let alone clearly err. So the question I think Judge Harris is posing to you, and I don't mean to paraphrase her and I get it wrong, let me not, is a finding clearly erroneous if the stated reason for the denial of the reduction is not in the record. And then I would add, must it be in the record or must it be apparent from the record? What's the answer to those? Your Honor, I think the finding should be... It's obviously better that it be in the record. But if it's not in the record and but it's still apparent from the record, is that you're still arguing that the burden is on the person seeking the reduction? That's correct, Your Honor. And we're under a clearly erroneous standard. But what's the difference between being stated on the record and being apparent from the record? What legal significance should we ascribe to that? Your Honor, I would argue that so long as you have confidence as to what the finding is under the apparent scenario that you have, that you have confidence that it's in the record. I don't think there's much difference in the two. This really does go to my concern. I mean, I read this hearing, and I don't know that there's anything apparent on the record. And sometimes it seems like the district court thought you could only get the minor reduction credit if you actually know what the standard is. And then there's this discussion of white where it's just going back to that integral role theory. And so there's a lot of stuff on the record that gives me apprehension about what the basis for this decision was. And then you get to the explanation, and it's at best terse. And I don't, I really don't understand this idea that there's no independent corroborating evidence. Because I would have thought the PSR is at least worth discussing at this point, that there is some evidence here. And you may not think it's enough to get over the, but it's not that there's nothing. There's the whole PSR. And so I'm very, I am left sort of unsettled by what happened here. Let me work on this. So first, let's start with the application note 3 where it talks about, we look at the totality of the circumstances, and the court should look at the totality of the circumstances in determining whether or not to author the reduction. If you look at the entire record as it relates to both hearings, judge, child, the district court, and I wrote down references to the record, the district court at the appendix pages 30 through 34 discusses the five factors contained in 3 application note 3C, the five factors that were added pursuant to amendment 794. There is a discussion of those factors. She uses those words specifically, scope of the activity, benefit to the defendant. There are specific references made to those factors. So that is one example. Another example of how the district court applied amendment 794 to the case. In that exchange, I think there is also a probation officer who talks about how the scope of the conspiracy is limited. We also have the fact that she asked Mr. Kendrick a great deal of questions about the significance of setting up the deal. And in the government's brief, the government argues that that is really the distinction that Mr. De Leon is hanging his hat on, that he wasn't the one who set up the deal. And the court really delved into that very, very carefully. And in the record, you would probably notice that she asked me, she said, Mr. Moorman, tell me about the setup, how this is really significant, or why isn't this important? And I gave the example of the wiretap that I think Judge Motz also asked about how maybe the fact that De Leon was really the man in charge and didn't want to get his hands dirty with the drug deal. So I think if you look at the record as a whole, I think that the district court very carefully applied the factors contained pursuant to amendment 794, pursuant to application note 3C. I also think, you're absolutely right, Judge Harris, that there was discussion of the White case, but as Castro says, that still is not the case. It's still a factor. It's not determinative. And I don't think necessarily you can say, Your Honor, that just because that was the last concept that was mentioned before the judge decided to rule, I don't think... I agree. You can't make us strong. I'm just, given the brevity of the holding, I'm sort of looking for, I'm trying to do what I think Judge Wilkinson is exactly saying we should do, see what is apparent on the face of this record. And so I'm looking at the hearing to try to get some sense for what the court was doing. We had a meeting in a parking lot on August 12, 2015 that lasted 20 minutes between Suaza Molina and the confidential source. Then we had a phone call or communications the following day to set up the meeting where the deal was to be done. And then we had two individuals show up in a van with 983 grams of methamphetamine. They were arrested. After it was over, they pointed the finger at each other. And I think those are the facts that, and I think page 57 or 58 of the joint appendix where Judge Childs said, What we've got to do is we've got to get the evidence. We've got here basically two people pointing the finger at each other. We don't have independent corroborating evidence. All we have is the PSR which says, De Leon says that Suaza Molina recruited me. Suaza Molina says that De Leon recruited me. And that... And one of them set up the deal and was on the DEA's radar as a broker of transactions to Mexico, also the PSR says. And that is what the PSR says. So I just think we should cover everything that the PSR says. Well, you're absolutely right. But at the same time, as was indicative of the question Judge Mott's asked in the argument I tried to make during the sentencing hearing, I think that cuts both ways. And I think that that, because it cuts both ways, I think it cuts in favor of the government under a clearly erroneous name. Judge Mott, do you have any questions? No. Mr. Kendrick, you have some rebuttal time. I'll be brief and respond specifically to some of the issues that came up here. On Joint Appendix page 74 and 75, paragraphs 8 through 15 of the PSR, under our law, those are the facts of this case. If I don't object to them and then later come up here and complain about them, I will not have much love, and nor does the government. So paragraphs 8 through 15 set up a timeline of the deal with a targeting person who is a known drug dealer, who has a very deep connection to a drug trafficking organization that has the authority to negotiate price points, delivery, and deals. And then in the final paragraph, he points the finger at my client. So, number one, there is a substantial difference. We got into a little bit of a brouhaha at the sentencing hearing about what substantial means, but this court defined it in, I'll probably say the name wrong, celebrezee, which I cite in my brief, and it says it's more than a mere scintilla, but it's less than a preponderance. It's not some overwhelming avalanche of evidence, it's something we can see, something of substance. And then when the court says there's no independent corroborating evidence, we are in a procedural posture in a criminal case where the evidence has been set out for us. When I show up at a sentencing hearing having not objected to the PSR, and the government does the same thing, we have essentially stipulated to a set of facts. Those stipulated facts are found in paragraph 8 through 15. Those facts show a marked difference in responsibilities and roles between Mr. Suazo Molino and Mr. Guerrero de Leon. That distinction means that my client is an along for the ride type person based on the government set of facts, which no one has disagreed with. The district court has, I think there's several issues here. The record is apparent because when we don't object to the PSR, we don't get to do something different. We don't get to present a new piece of evidence unless someone has taken issue with it. So if no one takes issue with it, then it is what it is. It just exists. And the court doesn't need independent corroborating evidence. That's in the PSR. So the evidence in the PSR corroborates my position that my client is a lesser culpability player in this drug deal. So there's definitely a substantial difference between the two based on the evidence in the PSR. That evidence serves as the corroboration required to get me over the preponderance of evidence, which is just more likely than not. And under those circumstances, the clear error was that, again, it's not clear what the district court ruled on, but it is clear what the facts were. So there is no circumstance under which those facts wouldn't result in the application of the mitigating role reduction, if the mitigating role reduction has any meaning. And the test of the amendment... But the possible flaw with that is if we should conclude that these facts could lead to an adverse ruling to you, then you lose now, right? Absolutely. I'm bound by what the court decides. But I think that... Well, I know it's what the court decides, but even by the basis of your own reasoning. Your whole argument depends on the fact that you could only conclude on these facts that your client had a minor role. Doesn't it? It does. And I think it stems from the fact that he meets each of the five factors issued by the commission. So there will rarely be a clearer case for the application of the reduction. And that's just based on what the commission has told us. And in fact, if we don't apply it, we go right back to the problem pre-amendment, which is we're not really applying it to anybody because the standard has become too high. So in this case, I think that we do apply it and would ask that you remand for that to be... Okay. Thank you. This honorable court stands adjourned.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Pamela A. Harris